IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANDON MARTELL ODEN          :
     Plaintiff,                :
                               :
                               :
vs.                           :          CIVIL ACTION 17-00205-WS-MU
                               :
CYNTHIA STEWART,*et. al*,      :
     Defendants.               :
                               :

## REPORT & RECOMMENDATION

Plaintiff Brandon Martell Oden, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that summary judgment should be **GRANTED** in favor of Defendant Stewart and that Plaintiff Oden's action against this Defendant be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the Court's **intention to recommend the granting of summary judgment for Defendants Jesse Wilson and C. Arthur**, who have not been served with this complaint to date.

## I.    Procedural Aspects of the Case.

Plaintiff Oden brings this action against Warden Cynthia Stewart, Officer C. Arthur, and Officer Jesse Wilson, for excessive use of force, denial of medical care, false disciplinary charges, and deprivation of property. (Doc. 7 at 5, 7-8,

10, 14-15). The action was served on Defendant Warden Cynthia Stewart, and she has answered the suit and filed a special report,[1] complete with incident reports, medical records, internal investigation reports, and affidavits. (Docs. 20, 21, 26). After review of the pleadings, the Court converted the answer and special report into a Motion for Summary Judgment (Doc. 22), to which Plaintiff Oden has responded. (Doc. 25).

Oden filed a Motion for Extension of Time to Respond to Defendant's Supplement to the Special Report (Doc. 27). Defendant's supplement (doc. 26) is comprised entirely of the Internal Investigation of the November 9, 2016 incident subject of this complaint and presents no new arguments, facts, or issues to which Plaintiff has not previously mentioned in his complaint or responded to in opposition to the Motion for Summary Judgment. (*See* Doc. 25). For this reason, the Court **denies** Plaintiff's Motion for an Extension of Time to Respond (doc. 27) as futile.

Plaintiff Oden also filed a Motion to Subpoena documents from Holman Correctional Facility. (Doc. 28). In his motion, he requests the bed rosters for November 7-9, 2016, as well as access to a computer, printer, and Internet for assistance in bringing this suit. (*Id*. at 1). Given that Plaintiff has sufficiently pleaded the facts related to his asserted claims (and they are not complex in nature), Plaintiff has shown no need for Internet and computer assistance beyond that to which he currently has access. Importantly, the Court is required to take

---

[1] To date, this action has not been served on Defendants Arthur and Wilson.

Plaintiff's version of the facts as true for purposes of this motion; thus, Plaintiff's request for copies of the prison bed assignments are futile and not necessary at this stage of the action. Consequently, the Court hereby **denies** Plaintiff's motion (doc. 28).

After a thorough review of the record, the Court determines that Defendant's Motion for Summary Judgment is ripe for consideration.

## II.  Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing, or pointing out to, the district court that the nonmov-

ing party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Id.* at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the
> nonmoving party to go beyond the pleadings and by [its] own affida-
> vits, or by the 'depositions, answers to interrogatories, and admis-
> sions on file,' designate 'specific facts showing that there is a genuine
> issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmov-
> ing party "must do more than show that there is some metaphysical
> doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith
> Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986). On the other hand, the evidence of the nonmovant must be
> believed and all justifiable inferences must be drawn in its favor. *See
> Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286,

1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends

only to "genuine" disputes over material facts. A genuine dispute requires more

than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at

1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the

nonmoving party must produce substantial evidence in order to defeat a motion

for summary judgment. *Id.* In addition, "[t]here is no burden upon the district

court to distill every potential argument that could be made based upon the mate-

rials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*,

43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that

no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*,

550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it— a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[2]

### III. Summary Judgment Facts.

The claims asserted against the defendants center around two incidents: (1) November 9, 2016 Incident and (2) November 19, 2016 Incident.[3]  The parties' allegations and facts relevant to these incidents are summarized below.

### A. November 9, 2016 Incident.

In his complaint, Plaintiff Oden claims:

> On Nov. 9, 2016, ADOC Cert team entered B-Dorm at Holman Correction around 5:00 a.m.  They entered B-Dorm brutally beating inmates waking them up out of their sl[ee]p, then tying our hands behind our back in zip tie's making us lay face down.  In full compliance, they continue[d] beating us.  They had a list of twenty inmate[s'] names they were suppose to apprehended using the proper precautions to do so.  They beat 3/4 's of 114 inmates.  Officer Jesse Wilson and C-Author step on my private part and step on my neck [and] beat on an Inmate sleeping on Bed B-46, stepping onto my Bed B-45.  I was denied medical attention for several day [s] until Nov. 17, 2016.

---

[2]     "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

[3]     "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) ((citation and quotations omitted)).  "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

> I have been in server[sic] pain since [and] have [had] difficulties
> since.

(Doc. 7 at 13). The prison incident report regarding the force used on November 9, 2016 describes preceding events to the dormitory raid and clarifies why the CERT team entered to seize certain inmates; notably, Plaintiff does not refute the facts contained in the incident report. The report states:

> On November 7, 2016, the Southern CERT members entered B-Dormitory and ordered all inmates to remove sticks and tied up blankets from their beds. The inmates refused to comply and became very hostile and aggressive toward the CERT members. The inmates gathered in a threatening and intimidating manner around the CERT members stating, "This is 2016, and we run this, slavery is over with, we already done killed one of y'all." Several unidentified inmates were observed with handmade knives in their possession. The CERT members were able to exit the dormitory without incident. The inmates with handmade knives were later identified by the CERT members through IMAS. On November 9, 2016, at approximately 6:35 a.m., the North Central, South Central, and Southern Team CERT Teams entered B-Dormitory to arrest the suspects. . . . The inmates were arrested and escorted to the health care unit for medical assessments. . . .

(Doc. 21-1 at 5). The CERT team's search resulted in the confiscation of thirty (30) handmade knives and twenty-one (21) inmates were transferred to segregation pending disciplinary actions for failing to obey a direct order, gathering in a threatening or intimidating manner, and unauthorized possession of a weapon or device that could be used as a weapon. (*Id*. at 6). It is undisputed that Plaintiff Oden was not one of the inmates who was arrested and/or charged by the CERT team on November 9, 2016.

The medical records show, however, that Plaintiff received a body chart on November 9, 2016, at 7:45 a.m., at the request of the CERT team. (Doc. 21-

1 at 65).   Oden's single statement to the nurse was, "My side hurts" and no dis-tress or signs of injury were noted.  (*Id*.).

On November 10, 2016, Oden submitted a sick call request stating:

> On Nov. 9th the CERT team entered into B-dorm and brutally beat me and almost 50 individuals - applying an extreme amount of pres-sure with their knee causing it to hurt with abnormal pain, as well as hitting me on my left side above the lungs, smashing my hand with a black jack with metal in it.  In intensive pain which my head hurt badly.

(*Id*. at 63).  Oden was examined that same day and Ibuprofen was prescribed for Oden's complaints of "neck and hand" soreness, but no signs of injury were noted, including no edema or bruising.  (*Id*. at 61-62, 64).

On November 13, 2016, Oden was involved in an altercation with an in-mate and was treated in the healthcare unit for a 1.5 cm superficial laceration to his right cheek and abrasions to the knuckles on his left hand.  (*Id*. at 53-60)

On November 14, 2016, Oden submitted another sick call request stating:

> On Nov. 9, 2016 the CERT team come in and place us in zip tie's and beat us.  One of them was standing on my neck and stepped on my private part which they have been swollen since and if I turn my neck to the left or right it sends a sharp pain down my spain[sic] threw[sic] the entire left side of my body.  Which hurts extremely bad which I believe one of my shoulder bones are broken or out of place because my back is in pain. . .

(*Id*. at 53).  Oden was provided a left shoulder sling and scrotal support and or-ders were made for an x-ray and appointment with the physician.  (*Id*. at 46, 54-57).  The chest x-ray revealed no acute disease and reported normal findings of the heart and lungs, with no pleural effusions, pneumothorax, or fracture.  (*Id*. at 68).

On November 23, 2016, Oden was examined by the institution's doctor for complaints of genital pain initiating on November 9, 2016. (Doc. 21-1 at 49). The chart notes detail that Oden "was involved in an altercation" two weeks prior and was suffering from neck, low back, and groin pain. (*Id*.). An x-ray revealed unremarkable findings, specifically detailing that Oden's spine was intact without significant depression or deformity, displaced fracture, or subluxation; nonetheless, Naproxyn and Roboxyn were prescribed for pain. (*Id*. at 46, 49, 66).

On December 12, 2016, Oden submitted a sick call request complaining of neck pain and dizziness, left shoulder pain with numbness, back pain, left scrotum pain, and right temple pain. (Doc. 21-1 at 50). Oden further complained he was seeing bright lights (stars) in his left eye, and described that these issues were ongoing since the CERT team "jumped" him. (*Id*.).

**B. November 19, 2016 Incident.**

In his complaint, Plaintiff Oden alleges that on November 19, 2016, the CERT team was again on site at Holman Correctional Facility and Officer Lieutenant Danny Fountain approached him at the pill call window and said, "come on with me" and informed Oden that he had orders from the Warden to take him to segregation and charged him with five false disciplinary actions. (Doc. 7 at 14).

Defendant Stewart has provided a copy of the Duty Officer and Incident Reports from November 19, 2016. The reports maintain that Officer Lieutenant Danny Fountain observed Oden walking suspiciously down the main hall and he escorted Oden to the Q dayroom and conducted a strip search of Oden. (Doc.

21-1 at 7-9).  Lieutenant Fountain confiscated an inmate made knife from Oden's left front pants pocket and after receiving a medical assessment Oden was placed in segregation.[4]  (Doc. 21-1 at 7-9)

The Disciplinary Actions of record show that on November 19, 2016, Oden was charged with the following:

1. Unauthorized possession of a weapon or device that could be used as a weapon.  (Doc. 21-1 at 13-17).  The violation is described as Oden having possession of one (1) handmade knife. (*Id*. at 13).

2. Unauthorized possession of state and/or another person's property.  (Doc. 21-1 at 18- 21).  The violation is described as observing Oden "wearing a neck brace, arm sling, and walking with a crutch" which were not issued by the medical staff.  "When questioned by Southern CERT Lieutenant Danny Fountain, inmate Oden admitted that the aforementioned items be-longed to other inmates."  (*Id*. at 18).

3. Possession of Contraband.  (Doc. 21-1 at 24-27).  The violation is de-scribed as Oden wearing a nonmedically issued neck brace, arm sling, and crutch. (*Id*. at 24).

4. Intentionally creating a security, safety, or health hazard.  (Doc. 21-1 at 28-31).  The violation is described as Oden "creating a situation that could have caused serious impairment to the operation of the institution and harm to [Oden]," by Oden wearing a nonmedically issued neck brace, arm sling, and walking with a crutch.  (*Id*. at 28).

5. Unauthorized possession of a phone(s)/accessory(s).  (Doc. 21-1 at 32-35).  The violation is described as the confiscation of one (1) cell phone and one (1) cell phone charger obtained from Officer Jesse Wilson's search of Oden's personal property.  (*Id*. at 32).

---

[4]     The record before the Court contains no Incident Report directly related to the unauthorized medical devices or the unauthorized possession of a cell phone, only the description of the violation contained in the disciplinary report.

On December 7, 2016, Warden Stewart approved the hearing officer's finding of guilt for the charges of possessing a weapon (knife) and possessing a cell phone and/or accessory(s) but did not approve the hearing officer's ruling on the charges related to the medical devices.[5] (*Id*. at 15, 19, 25, 29, 33, 36).

Oden argues the charges against him are false because he didn't possess any of the contraband for which he was disciplined. Specifically, Oden claims: (1) he does not carry a knife, (2) his "cutmate" in B-44, Alex Foster, had possession of his cell phone on November 19, 2016, and (3) he had to pay another inmate $50 to get his cell phone charger to him in lockup. (Doc. 7 at 14).

Oden supports his claim with the explanation that the defendants could not have seized his cell phone on November 19, 2016 because his cell phone was later confiscated by Officer Jesse Wilson on December 11, 2016 (Doc. 7 at 7),[6] and by reference to a conversation with Warden Rayborn that occurred on November 20, 2016, after Oden was transferred to segregation. (*Id*. at 14). According to Oden, Warden Rayborn questioned Oden about videos that were

---

[5]    Warden Stewart determined Oden's medical records supported orders for certain medical devices and that multiple disciplinaries were written for the same action. Consequently, Warden Stewart approved the guilty findings for the charges for possession of a knife and cell phone, and Oden received segregation time and loss of certain privileges for the disciplinary charges.    (Doc. 21-1 at 15, 19, 25, 29, 33, 36).

[6]    The record before the Court evidences, through the prison's Incident Report dated December 11, 2016, that Sergeant Jesse Wilson confiscated a cell phone from Oden during a random segregation cell search. (Doc. 21-1 at 10-12; Doc. 7 at 16). Sergeant Wilson affirms the same in his affidavit. (Doc. 21-2 at 1). Additionally, it appears from the submitted ADOC Disciplinary and Sanction sheet, that Oden was not charged with a disciplinary infraction for the contraband cell phone on December 11, 2016, but that he only received one cell phone related charge, that being on November 19, 2016. (*See* Doc. 21-1 at 36).

found on Oden's phone that were sent to a reporter, Christopher Harress, discussing beatings of inmates and pictures of the conditions under which the prisoners were living at the prison. (*Id*.). Oden maintains the he asked Warden Rayborn about the disciplinary charges brought against him and challenged the validity of them – arguing that the officers did not confiscate a knife or cell phone from him. (*Id*.). Oden claims Warden Rayborn admitted at that time that he "knew they didn't get a phone off of [Oden] because apparently it was still down the hall, but they probably saw [him] on it." (Doc. 7 at 14).

Sergeant Jesse Wilson declares by affidavit that he observed Oden using his cell phone to post live videos to Facebook from inside B-Dorm (one video showed Oden discussing a fighting he was in with another inmate). (Doc. 21-2 at 1). Sergeant Wilson further affirms that after Oden posted the video, Oden began claiming that the CERT team injured him and that the incident was reported to Internal Investigation Unit and the incident was thereafter investigated. (*Id*. at 2).

The Internal Investigative Report regarding the video postings reveals that on November 20, 2016, Warden William Streeter confiscated Oden's cell phone during a search for contraband in B-Dorm. (Doc. 26-1 at 2). Located on Oden's cell phone were text conversations between Oden and Christopher Harress, Investigative Reporter for the Mobile Press Register. (*Id*.). Oden was interviewed by an Internal Investigations investigator and revealed that "he had been in contact via Facebook with Cal Robinson of the Birmingham News and Investigative

Reporter Christopher Harress regarding the conditions of the prisons and how inmates are being mistreated. Inmate Oden stated that he had given his phone to another inmate prior to being placed in Segregation." (Doc. 26-1 at 3). Oden's Facebook page contained screen shots of text messages between the reporter Christopher Harress and himself, as well as three and a half minute video of Oden talking about how difficult prison life is but stating, "it's a small thing to a giant." (*Id*.). Additionally, Oden is seen in the video moving and walking around with no signs of being in pain or exhibiting symptoms of impaired or sustained injuries. (Doc. 26-1 at 3).

## V. Analysis.

Plaintiff Oden alleges in his complaint that Defendants Jesse Wilson and C. Arthur used excessive force against him on November 9, 2016, denied him medical care thereafter, and caused false disciplinary charges to be brought against him on November 19, 2016. He also alleges that while housed in disciplinary segregation for the false charges Defendant Jesse Wilson took his personal property during a cell search. Oden further claims that Defendant Warden Cynthia Stewart, as a supervisor, is liable for the alleged acts as well. The Court will now address these claims in turn.

### A. Immunity Defenses.

Plaintiff Oden is suing the defendants in their official and individual capacities and seeks a monetary award of $10,000.00 in compensatory damages and $5,000.00 in punitive damages. (Doc. 1 at 7).

To the extent Plaintiff is proceeding against the defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Accordingly, the defendants in this action, all of whom were employed by the State of Alabama Department of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities. *See Parker v. Williams*, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), *overruled on other grounds in Turquitt v. Jefferson Cnty.*, 137 F.3d 1285 (11th Cir. 1998) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, the defendants, in their official capacities, are entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). While there is no doubt that the defendants in this action were acting

within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).  As to the remaining claims, defendants are entitled to qualified immunity unless Plaintiff can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known.  *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether or not this action asserts any constitutional violation.

### B.  False Disciplinary Infractions.

Taking Oden's allegations as true, that the CERT team wrote him false disciplinary charges on November 19, 2016, which "messed up [his] two year clear record and jeopardized and hindered [his] early parole chances", Plaintiff Oden fails to state a cognizable claim under § 1983.  (Doc. 7 at 16).

A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct[.]" *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273, 99 L. Ed. 2d 484 (1988).  The law is clear, as long as an inmate is afforded the minimum proce-dural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.

Ct. 2963, 41 L. Ed. 2d 935 (1974), his action for damages resulting from the alleged false charge must fail. *Wolff* requires that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67.

In the present action, Plaintiff Oden admittedly was served with the disciplinary report for each charge brought against him and was given the opportunity to call witnesses at the hearing. (*See* Doc. 21-1 at 14-35). A hearing was held for each charge pursuant to the administrative regulations of the ADOC; Plaintiff was found guilty by the hearing officer of all charges; Plaintiff was provided written statements of the findings against him and the evidence relied upon, and the Warden approved two of the five decisions. (*Id*.). Accordingly, Defendants complied with every element needed to provide Plaintiff with due process, and Plaintiff has failed to state a claim for which relief may be granted pursuant to § 1983.[7]

---

[7]     Interestingly, although Plaintiff challenges the validity of his disciplinary charges with the argument that his cell phone was not physically confiscated on November 19, 2016, he fails to dispute that he was not in fact in possession of a contraband cell phone. To the contrary, Plaintiff admits he had a cell phone in prison; he admits he contacted reporters with the cell phone; he admits he sent videos with the device. Taking Plaintiff's facts as true, even if his cell phone was not confiscated until December 11, 2016, evidence exists (including Plaintiff's admissions, copies of Facebook postings from Oden's account, and copies of emails from the reporter (*see* doc. 26-1)) that he did in fact possess an unauthorized cell phone during the time period alleged – whether the cell phone was seized at that time or a later date.

Additionally, to the extent Plaintiff Oden complains that the false discipli-
nary charges jeopardized or hindered his chance at early parole, the law is clear;
there is no federal constitutional right to parole, and Alabama law confers no lib-
erty interest in parole.  *Jones v. Ray*, 279 F.3d 944, 945 (11th Cir. 2001) (citing
*Greenholtz v. Inmates v. Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct.
2100, 60 L. Ed. 2d 668 (1999)); *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir.
1991).  Plaintiff's concern that being found guilty of a disciplinary infraction might
affect his abilities to gain entry to rehabilitative programs or parole at some un-
known future date is beyond speculative.  Therefore, Plaintiff cannot state a pro-
cedural due process claim against the defendants.

### C.  Excessive Force.

The Eighth Amendment's prohibition against cruel and unusual punish-
ment, U.S. Const. amend. VIII, governs the use of force by prison officials
against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.
1999).  In order to establish an Eighth Amendment excessive force claim against
the defendants, Oden must prove both an objective and subjective component.
That is, he must show that the alleged wrongdoing was objectively "harmful
enough" to establish a constitutional violation and that the defendants "act[ed]
with a sufficiently culpable state of mind; i.e., that they acted maliciously and sa-
distically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995,
999, 117 L. Ed. 2d 156 (1992)(citations omitted); *see also Lumley v. City of Dade
City, Fla*., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the
plaintiff must show the complained of conduct "shocks the conscience").

"[W]here a prison security measure is undertaken to resolve a disturb-
ance . . . that indisputably poses significant risks to the safety of inmates and
prison staff, . . . the question of whether the measure taken inflicted unnecessary
and wanton pain and suffering ultimately turns on whether the force was applied
in a good faith effort to maintain or restore discipline or maliciously and sadisti-
cally for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21; *see
also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Factors relevant
to this determination include the "need for the application of force, the relation-
ship between that need and the amount of force used, the threat reasonably per-
ceived by the responsible officials, and any efforts made to temper the severity of
a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).
When considering these factors, courts afford "a wide range of deference to
prison officials acting to preserve discipline and security, including when consid-
ering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F.
3d 1212, 1217 (11th Cir. 2009)(quotation marks omitted).

As to Oden's allegation that during the November 9, 2016 raid of B-Dorm
Officer Wilson stepped on his "private part" (which he contends is "attempted
murder") and Officer Arthur stepped on his neck and punched his left eye (doc. 7
at 5, 7, 17), the undersigned determines the force was utilized to restore order to
the prison and not for the purpose of causing harm. The record evidences a ris-
ing hostile and insubordinate climate in B-Dorm equating to an inmate riot or re-
volt against the correctional officers at the prison and certainly required the use
of some force. According to the reports submitted by Defendant Stewart, which

Plaintiff does not dispute or challenge, the inmates created fort-like structures over their beds made of sticks and blankets and refused officers' orders to remove the same. The inmates of B-Dorm further attempted to intimidate officers by brandishing handmade knives while shouting threats such as, "[t]his is 2016, and we run this, slavery is over with, we already done killed one of y'all", to the extent that the officers were forced to leave the dorm on November 7, 2016. Upon returning to B-Dorm on November 9, 2016, indisputably force was required.

As to the amount of force used, the evidence reveals that the CERT team used appropriate force given the perceived threat and took actions to temper the force used. It is undisputed that the CERT team retreated from the initial confrontation (on November 7, 2016) and designed a plan to regain control of B-Dorm (on November 9, 2016). The CERT team then reentered B-Dorm on November 9, 2016, not with chemical agents to affect the entire dorm, but with a list of the weapon yielding inmates and a goal of arresting those offenders and confiscating the contraband weapons. The CERT team's decision to reenter B-Dorm in the early morning, with an increased number of officers, and to zip tie all inmates within B-dorm further evidences the officers' intent to lower the threat and temper the amount of force used. Notably, other than the weapon yielding offenders, only 11 (eleven) other inmates were charged with a disciplinary action for failing to follow the direct orders of an officer, and those inmates were allowed to remain in general population. (*See* Doc. 21-1 at 5-6). Moreover, the record shows that the arrested inmates suffered only minor injuries following the B-Dorm raid on November 9, 2016, evidencing the CERT team's tactical control and lack

of utilized force. Notably, the body charts of the arrested inmates report injuries and complaints ranging from "nothing", to redness, to sore ribs, to minor abrasions. (Doc. 26-1 at 16-42). As to Plaintiff Oden specifically, the record indicates that when examined by the nursing staff on November 9, 2016, Plaintiff complained only of his side hurting and no signs of injuries were detected or observed. (*See* Doc. 21-1 at 65).

Taking the facts in total, the Court finds no objective or subjective evidence that the defendants acted with deliberant indifference to the safety of Plaintiff, nor did they act intentionally to cause harm to Plaintiff or any inmate, *Hudson*, 503 U.S. at 6-8, nor does this accidental incident "shock the conscience," *Lumley*, 327 F.3d at 1196, to find the defendants liable for a constitutional violation. If anything, the defendants' conduct was negligent, which is insufficient to sustain an Eighth Amendment constitutional violation claim. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (Conduct must be more than mere negligence to state a constitutional claim.); *Board. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("A showing of simple or even heightened negligence will not suffice."); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (Liability cannot be imposed in a § 1983 action for negligent acts.). The record, including Plaintiff's own evidentiary support, suggests that Plaintiff was "stepped on" in the course of the CERT team's efforts to reach and secure the inmate in the bunk above Plaintiff. This may be described, at worst, as negligence. The law is clear, it is "only a use of force that "is physically barbarous [or] involv[es] . . . the

19

unnecessary and wanton infliction of pain or the imposition of pain totally without pen[o]logical justification" violates the constitution. *Evans v. Dugger*, 908 F.2d 801, 803 (11th Cir. 1990). Thus, the Court finds that Plaintiff has failed to establish a claim of excessive force.

### D. Denial of Medical Care.

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010) (citing *Mann v. TaserInt'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). To satisfy the first objective element, Oden must prove his condition was, in fact, a serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir.2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant "'must *both* be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference'")(quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811, (1994)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).

It is questionable whether Plaintiff Oden suffered a serious medical need on November 9, 2016. However, for the sake of this analysis, the Court will assume without concluding that Oden's injuries constituted a serious medical need, which, if left untreated, would pose a substantial risk of serious medical harm. *Farrow*, 320 F.3d 1235, 1243. Turning to the second element, Oden must establish that the defendants acted with deliberate indifference in denying him medical care in order to establish a constitutional claim against him. This Plaintiff fails to do. Contrarily, the record belies Plaintiff's claim and evidences that Oden was provided ample care (including exams, x-rays, and medication) following the November 9, 2016 raid.

According to the medical records, Plaintiff was evaluated in the healthcare unit immediately following the B-dorm raid, where no injuries were noted and Plaintiff's sole complaint was that his side hurt.[8] Oden was then examined in the healthcare unit approximately five more times over the next month; notably, each time Oden submitted a request for care, he was evaluated by a doctor or the nursing staff. Additionally, it was not until five days after the raid that Oden first

---

[8]    In his complaint, Plaintiff implies that the body chart notations fail to accurately reflect his injuries. (Doc. 7 at 10). However, the record reveals Plaintiff did not complain of the injuries subject of the action (neither to a medical staff member or through a sick call request) until November 14, 2016. (Doc. 21-1 at 53).

complained of his neck being stepped on and two weeks after the raid that he complained of genital pain.  The record is conclusive; Plaintiff received repeated and adequate medical treatment following the B-Dorm raid.[9]  *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (When an inmate has received medical care, courts are reluctant to find deliberate indifference); *Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 905 (11th Cir. 2012) (Courts are "reluctant to consider a claim of deliberate indifference where [defendants] promptly respond[] to any medical emergencies that [the plaintiff] suffered.").

Taking Plaintiff Oden's version of the facts as true, the undersigned finds that Plaintiff received immediate and proper medical care for all medical needs associated with the claims of this action and no evidence of a constitutional violation exists.

### E.  Deprivation of Personal Property.

The Fourteenth Amendment protects against deprivations of life, liberty, or property by the States without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 88 L. Ed. 2d 662

---

[9]     To the extent Plaintiff attempts to assert a claim related to a delay in receiving medicine or medical treatment, such a claim would also fail, as Plaintiff does not allege any detrimental effect.  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.) (internal citations omitted) (footnotes omitted).

(1986).  However, a deprivation of a constitutional right with respect to the loss of property that is the result of a defendant's lack of due care or negligence does not violate the Fourteenth Amendment's Due Process Clause.  *Daniels,* 474 U.S. at 333.  And, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

In the present action, Oden alleges Defendant Jesse Wilson searched his cell and took or threw away unspecified legal documents and his personal address book(s). (Doc. 7 at 15).  Oden, however, does not allege that Defendant Wilson intentionally deprived him of his property.  Thus, the deprivation of property sounds in negligence, which is not a constitutional violation.  *Daniels*, 474 U.S. at 333. On the other hand, if the deprivation was intentional, which was not pled, Oden did not allege that an adequate, post-deprivation procedure was not available to him at the time of the deprivation.  *See Tinney v. Shores*, 77 F.3d 378, 382 n.1 (11th Cir. 1996) (finding that plaintiffs' claim failed when they argued the violation was complete at the time of the deprivation because they neglected to address the availability of an adequate post-deprivation remedy).

Nevertheless, Oden would not be able to establish that an adequate post-deprivation remedy was not available to him at the time of the deprivation because courts have recognized that Alabama law provides adequate post-deprivation remedies. *Dawson v. City of Montgomery*, 2008 U.S. Dist. LEXIS 19833,

2008 WL 659800, at *8 (M.D. Ala. 2008) (unpublished) (finding that Alabama's

conversion statute, Alabama Code § 6-5-260 (1975), is an adequate post-depri-

vation remedy); *Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 623 (M.D.

Ala. 1995) (finding that the taking of property by the sheriff and deputies may be

addressed in tort pursuant to Alabama Code § 6-5-260 or by filing a claim with

the Alabama Board of Adjustment pursuant to Alabama Code §§ 41-9-60, *et*

*seq.*); *Milton v. Espey*, 356 So.2d 1201, 1203 (Ala. 1978)(finding that a state em-

ployee may be personally liable to an inmate in an ordinary tort action). It is not

necessary that the post-deprivation remedy be available to Oden at the present

time to determine whether the deprivation was with or without due process. *See*

*Parratt*, 451 U.S. at 543-44. It is only required that an adequate post-deprivation

remedy be available when the deprivation occurred. *Id.* Because an adequate

post-deprivation remedy was available at the time of Oden's loss, the deprivation

of his property was not without due process. Accordingly, Oden's § 1983 claim

against Wilson for a deprivation of property without due process law is frivolous

and is due to be dismissed with prejudice. *Jackson v. Hill*, 569 F. App'x 697, 698

(11th Cir. 2014).

### F. Supervisory Liability.

Plaintiff Oden claims Defendant Cynthia Stewart, as warden, is liable for

the alleged deprivations discussed above.[10] Such a claim is rooted solely in the

theory of *respondeat superior* and is not actionable.

---

[10]     In Plaintiff's complaint, Oden asserts only two allegations against Warden
Stewart: (1) that he notified the warden about the incidents subject of this action

Under § 1983, holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a viable theory of liability. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Moreover, when the underlying actions of a subordinate or employee caused no constitutional harm, liability cannot be imposed on the supervisor, employer, or governmental entity for its allegedly related policy. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).

Reading the facts in the light most favorable to Plaintiff, the undersigned finds no support that Warden Stewart or any prison official violated Plaintiff's constitutional rights. Thus, supervisory liability cannot be imposed on Defendant

---

but, to date, she has not responded to the same, and (2) that, "[Warden Stewart has failed] to return the evidence of [his] doctor's order's which they found [him] guilty of the knife, and cell phone they never got off [him]." (Doc. 7 at 15). These vague and indiscernible allegations fail to assert a constitutional claim under section 1983.

Warden Stewart. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.)("[A]n in-quiry into a governmental entity's custom or policy is relevant only when a consti-tutional deprivation has occurred."), *cert. denied*, 522 U.S. 966, 118 S. Ct. 412, 139 L. Ed. 2d 315 (1997). Additionally, Plaintiff fails to articulate any policy or custom established by Defendant Stewart showing that she is in any way respon-sible for unconstitutional acts. Therefore, the undersigned finds Defendant Stew-art has no supervisory liability, and Plaintiff has failed to carry his burden of showing a genuine issue of material fact exists for trial.

### G. Miscellaneous State Law Claims.

In his response to this motion, Plaintiff appears to assert various state law claims against the defendants.[11] Despite the lack of opportunity the defendants have had to respond to these allegations, the Court recommends these state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3). See 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental juris-diction over state law claims if it has dismissed the claims over which it had origi-nal jurisdiction). Therefore, it is recommended that Plaintiff's state law claims be dismissed, without prejudice.

### VI. Notice of Judgment Independent of the Motion.

---

[11]    In his vague and rambling response to this motion, Plaintiff asserts that the defendants conspired to defame and slander him by filing false disciplinary charges against him. (Doc. 25 at 12-13, 15). He also contends that the defend-ants are liable for intentional and/or negligent infliction of emotional distress for placing him in a segregation cell on death row, causing him nightmares and night sweats for three days. (*Id*. at 13-14).

Rule 56 of the *Federal Rules of Civil Procedure* permits the Court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Thus, by filing of this Report and Recommendation, the Court notifies Plaintiff of its intention to consider a recommendation to the District Judge that he enter summary judgment, *sua sponte*, in favor of Defendants Jesse Wilson and C. Arthur on the claims raised against them in this action.

As discussed previously, Plaintiff Oden alleges that Defendants Wilson and Arthur are liable for the use of excessive force, denial of medical care, charging him with false disciplinary actions, and deprivation of property. Oden further claimed that Defendant Stewart, as the supervisor of Defendants Wilson and Arthur, was liable for these same violations. Thus, in an effort to determine whether or not Plaintiff carried his burden in establishing a constitutional claim, the undersigned has analyzed the aforementioned claims and concluded there to be no cognizable claim pursuant to § 1983. For the reasons stated in this report, after a review of all relevant facts, it is recommended that summary judgment be entered on behalf of Defendants Wilson and Arthur and dismissal of all claims against them.

However, Defendants Wilson and Arthur have yet to be served with the complaint and are therefore not a party to this motion for summary judgment.[12]

_____

[12] Notably, Jesse Wilson has submitted an affidavit (as part of Defendant

Given that Oden presents no additional allegations nor provides any differing facts as to his claims against these defendants than those that have been analyzed *supra*, the Court maintains that its findings of facts and conclusions of law regarding the claims presented against Defendants Wilson and Arthur would be essentially identical to those discussed in this report. Accordingly, Plaintiff Oden is hereby put on notice by this report and the analysis of his claims of the Court's intention to consider summary judgment in favor of Defendants Wilson and Arthur.

Accordingly, within the fourteen days provided for filing objections to this Report and Recommendation, Plaintiff Oden shall show cause, in writing, why the Court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendants Wilson and Arthur on Plaintiff's 42 U.S.C. § 1983 claims.

In responding to this notice, Plaintiff should refer to Fed. R. Civ. P. Rule 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

Stewart's special report) addressing the claims asserted against him in this action. (Doc. 21-2). In the affidavit, Defendant Jesse Wilson admits observing Oden with a cell phone, posting videos with the device, reporting the incident to I&I, and confiscating Oden's cell phone on December 11, 2016. (*Id*.). Additionally, through the affidavit, Defendant Wilson denies using excessive force against Oden and denies taking Plaintiff's property or knowledge of such act. (*Id*.).

> (B)    showing that the materials cited do not establish the ab-
> sence . . . of a genuine dispute, or that an adverse party cannot pro-
> duce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case.  If plaintiff fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56 the court will accept the evidence identified above as undisputed, for purposes of evaluating whether the court should grant summary judgment in the defendants' favor. *See* Fed. R. Civ. P. 56(e).  Plaintiff's failure to follow the requirements of Rule 56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding District Judge William H. Steele that he enter summary judgment in the favor of the Defendants Jesse Wilson and C. Arthur and enter final judgment in this case without a trial.

**VII.  Conclusion.**

Plaintiff Oden has failed to show an Eighth Amendment constitutional violation on the part of the Defendant Warden Cynthia Stewart.  Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in her favor of and that Plaintiff Oden's action against this Defendant be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the Court's **intention to recommend the granting of summary judgment for Defendants Jesse Wilson and C. Arthur**, who have not been served with this complaint to date.  Plaintiff is afforded the opportunity to include within any objections he has to this report and recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendants Jesse Wilson and C. Arthur.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the

interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this the 10th day of August 2018.

s/ P. Bradley Murray
P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE